THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

DAVID ALLEN MALOY                    )
                                     )
            Petitioner,              )
                                     )
      v.                             )        Case No. 1:11-cr-00258-GBL
                                     )
UNITED STATES OF AMERICA,            )
                                     )
            Respondent.              )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Petitioner David Allen Maloy's ("Petitioner")

Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("§ 2255 Motion")

(Doc. 79). Petitioner entered into a plea agreement with the Respondent ("Government")

pursuant to Rule 11 of the Federal Rules of Criminal Procedure after which this Court imposed a

sentence of 120 months of imprisonment. Petitioner now challenges his sentence on the basis of

his incompetence to enter a guilty plea, ineffective assistance of counsel, and error by this Court.

There are three issues before the Court. The first issue is whether this Court should grant

Petitioner's § 2255 Motion where the Petitioner claims that he "was not competent on the day of

his plea, causing his plea to be involuntary" (Doc. 93). The second issue is whether this Court

should grant Petitioner's § 2255 Motion where the Petitioner claims that his counsel was

ineffective by failing (1) to inquire into the effects of Petitioner's medications on his ability to

comprehend the plea hearing and (2) to notify the Court about these conditions (Docs. 80, 93).

The third issue is whether this Court should grant Petitioner's § 2255 Motion where the

Petitioner alleges that this Court erred by failing to inquire further into the effects of Petitioner's

medications on his ability to enter a plea.

The Court denies Petitioner's § 2255 Motion. After careful consideration of the testimony presented at the evidentiary hearing, the plea hearing record, and the Court's recollection of Petitioner's demeanor during the plea hearing, the Court finds that Petitioner entered his plea knowingly and voluntarily. Further, Petitioner has made no showing of prejudice and Petitioner has not presented evidence that his counsel rendered ineffective assistance of counsel.

## I.  BACKGROUND

Petitioner brought this § 2255 action against the Government alleging (1) that his plea was not knowingly and intelligently made; (2) that his counsel was ineffective for failing to investigate Petitioner's competency before entering the plea and failing to review and prepare for Petitioner's sentencing; and (3) error by this Court during the Rule 11 colloquy for failing to conduct a sufficient inquiry into how the medications Petitioner was taking affected his competence to enter the guilty plea (Docs. 79, 80, 93).

On May 26, 2011, Petitioner was indicted for mail fraud in violation of 18 U.S.C. §§ 1341 and 2 (Counts 1-7), and for unlawful monetary transactions in violation of 18 U.S.C. §§ 1957 and 2 (Counts 8-9) (Doc. 18). On March 10, 2011, the Government filed a Motion to Appoint Local Counsel for Petitioner (Doc. 8).  On March 15, 2011, this Court granted the Government's Motion (Doc. 9).  Thereafter, this Court appointed Assistant Federal Public Defender Todd M. Richman ("counsel") to provide assistance to Petitioner in this matter including during the plea agreement and sentencing.

On September 14, 2011, this Court conducted a plea hearing and a colloquy pursuant to Federal Rule of Criminal Procedure 11 (Doc. 81). Petitioner pled guilty to one count of mail fraud in violation of 18 U.S.C. 1341, which carried maximum penalties of a term of 20 years imprisonment, a fine of $250,000 or twice the amount of gross gain or loss, full restitution, a

2

special assessment, and three years of supervised release (Doc. 39).  Thereafter, the Court, on the Government's motion, dismissed six other counts of the indictment (Doc. 42).  On March 26, 2012 this Court sentenced Petitioner to 120 months in the custody of the Bureau of Prisons ("BOP") and a term of three years supervised release with conditions (Docs. 72, 83).

Under the terms of the plea agreement, Petitioner waived his right to (1) appeal the conviction and any sentence within the statutory maximum or the manner in which the sentence is determined and (2) request or receive from the Government records pertaining to the investigation or prosecution of this case, including records sought under the Freedom of Information Act, FOIA, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a (Doc. 39 at 4). Petitioner did not appeal his sentence.

On March 11, 2013, Petitioner, proceeding *pro se*, filed timely a timely § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Docs. 76, 80).  The Government filed its Opposition on June 18, 2013 (Doc. 83).  Petitioner's retained counsel filed a Reply on October 30, 2013 (Doc. 93). On November 1, 2013, the Government filed a Sur-reply Brief to Petitioner's Reply alleging that Petitioner's pleading through his retained counsel raised new issues (Doc. 94).

In his *pro se* Petition, Petitioner alleged that his appointed counsel rendered ineffective assistance when he: (1) induced Petitioner to accept the plea by telling Petitioner that he would likely receive a sentence of house confinement or a year or two at most of imprisonment; (2) advised Petitioner against making any statement to the Judge during the plea hearing because it could have a negative impact on his sentencing; (3) failed to inquire further into Petitioner's competency to enter a plea and to alert the court that petitioner was in poor physical and mental condition; and (4) failed to challenge the amount of loss at the sentencing hearing (Docs. 80 at 3-5; 93 at 4, 7).

On March 12, 2014, the Court conducted an evidentiary hearing on the factual disputes. Petitioner appeared with retained counsel (Evidentiary Tr. at 1). At the evidentiary hearing, Petitioner abandoned his claims of ineffective assistance of counsel where (1) counsel failed review and prepare for Petitioner's sentencing by not arguing about the loss amount and (2) counsel instructed Petitioner not to make any statements to the Court (Evidentiary Tr. at 26). Petitioner did not pursue the allegations that he was induced to accept the plea when counsel allegedly told Petitioner that he would likely receive a sentence of house confinement or a year or two at most of imprisonment.

Petitioner now asserts three arguments in support of his § 2255 Motion. First, Petitioner argues that he was not capable of following and understanding the plea proceedings at the plea hearing because he was under the influence of medications capable of causing confusion and hypnotic sedative effects (Evidentiary Tr. at 4, 6, 58). The parties have stipulated to these side effects. *Id.* Petitioner took double the dosage of the two medications before the plea hearing. *Id.* Petitioner claims that his mind was cloudy from these drugs on the day of the plea hearing and throughout the entire plea process. *Id.* at 60. Thus, had his mind been clearer he would have understood what he was doing and could have made a different decision. *Id.* at 60.

Second, Petitioner claims that he was "zoned out" on the day of the plea hearing. *Id* at 59. He argues that under *Strickland v. Washington*, 466 U.S. 668 (1984), his counsel should have inquired about his state of mind and well being. *Id.* Had counsel done so, Petitioner may have entered the plea at a later date when he was more focused or he may have considered going to trial. *Id.*

Finally, Petitioner argues that under *United States v. Damon*, 191 F.3d 561, 564 (4th Cir. 1999), the Court erred by not inquiring into Petitioner's medications and their effects on his ability plead guilty. *Id.* at 59-60, 67 – 71.

The Government asserts five arguments in opposition of Petitioner's § 2255 Motion. First, the Government argues that, on the day of his plea, Petitioner was fully informed and intended on pleading guilty as Petitioner met and discussed the plea extensively with counsel and signed the plea papers before the plea hearing (Evidentiary Tr. at 62). Second, the Government argues that Petitioner did not state that he experienced cognitive side effects from his drugs any time prior to the day of the pleading. *Id.* Third, the Government argues that Petitioner's demeanor during the plea hearing did not raise any concerns under *Damon*. *Id.* Further, Petitioner's counsel did not observe any symptoms of the possible side effects of the drugs throughout his entire time of representing Petitioner. *Id.* Fourth, the Government argues that Petitioner's credibility is questionable as he is an "admitted fraudster" and because Petitioner equivocated over which date he was not feeling well and collapsed at the airport. *Id.* at 63. Finally, the Government argues that Petitioner has not carried his burden of establishing deficiency of counsel and resulting prejudice under *Strickland*; *United States v. Fugit*, 703 F.3d 248 (4th Cir. 2012); *United States v. Dyess*, 730 F.3d 354 (4th Cir. 2012).

## II.    DISCUSSION

### A.  Standards of Review

Under 28 U.S.C. § 2255, a prisoner in federal custody may move the court, which imposed the sentence, to vacate, set aside or correct sentence upon grounds that (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence exceeds the maximum authorized

by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255 (2008). The Petitioner bears the burden of proof and must establish by a preponderance of the evidence that he is entitled to the collateral relief sought. *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967); *Miller v. United States*, 261F.2d 546, 547 (4th Cir. 1958); *United States v. Hawkins*, 2012 WL 3578924, at *1 (E.D.V.A. Aug. 17, 2012).

Section 2255 provides a safeguard against complete miscarriages of justice by allowing for the correction of constitutional, jurisdictional or other fundamental errors. *See United States v. Addonizo*, 442 U.S. 178, 185 (1979); *Hill v. United States*, 368 U.S. 424, 428 (1962); *Hawkins*, 2012 WL 3578924, at *1. Section 2255 is not intended to be a substitute for an appeal, thus "to obtain collateral relief based on trial errors to which no contemporaneous objection was made," petitioner must make a showing of both "cause" and "actual prejudice resulting from the errors. "*United States v. Frady*, 456 U.S. 152, 165 -67 (1982). The *Frady* cause and prejudice standard also applies to "collateral challenges to unappealed guilty pleas." *United States v. Maybeck*, 23 F.3d 888, 891-92 (4th Cir. 1994).

An ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Dretke v. Haley*, 541 U.S. 386, 394 (2004) (stating that ineffective assistance of counsel claims, may be raised "as a ground for cause or as a freestanding claim for relief — to safeguard against miscarriages of justice."); *see also United States v. Martinez*, 136 F.3d 972, 979 (4th Cir. 1998); *United States v. DeFusco*, 949 F.2d 114, 120-21 (4th Cir. 1991).

To prevail on a § 2255 Motion on the grounds of ineffective assistance of counsel, Petitioner must show that (1) counsel's performance was deficient, and (2) counsel's deficient

performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Petitioner must show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. The court's "scrutiny of counsel's performance must be highly differential." *Id.* 689. The court must endeavor to eliminate the distorting effects of hindsight. *Id.* Thus, the court must "evaluate the conduct from the counsel's perspective at the time" and "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* 699. Even if the Court finds that counsel made unprofessional errors, Petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* 694.

## B. Analysis

In support of his motion, Petitioner raises three arguments. First, Petitioner alleges that he was physically and mentally incapable, due to drug interactions, of understanding the terms of his plea agreement (Doc. 80). Second, Petitioner alleges ineffective assistance of counsel during his plea hearing and sentencing causing his plea to be involuntary. *See* Docs. 79 at 5; 80 at 4-5; 93 at 4, 7. Finally, Petitioner alleges that the Court erred in not conducting a thorough inquiry, during the Rule 11 colloquy, into the effects of Petitioner's medications on his competence to enter a guilty plea (Doc. 93 at 4-7). The Court will address each argument in turn.

### a. Competency at the Plea Hearing

The Court denies Petitioner's § 2255 motion on the basis of incompetence to enter a plea because Petitioner has not demonstrated that, due to the side effects of the drugs he had taken, he was cognitively impaired at the time that he entered his plea.

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, before a court accepts a plea of guilty or nolo contendere, the court must address the defendant (1) in person, in open court and advise him of his rights, (2) ensure that the plea is voluntary, and (3) determine the factual basis for the plea. Fed. R. Crim. P. 11 (b)(1-3). "A court must personally inform the defendant of and ensure that he understands the charges against him and the consequences of his guilty plea." *Damon*, 191 F.3d at 564. A guilty plea is an admission in open court of a defendant's past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his constitutional right before a jury or judge. *Brady v. United States*, 396 U.S. 742 (1970). Thus, a guilty plea must not only be voluntary but must be a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. *Id.* "The Rule 11 colloquy is designed to provide a structure to protect the defendant against making an uninformed and involuntary decision to plead guilty and to protect the public from an unjust judgment of guilty when a public trial has not been conducted." *United States v. Nicholson*, 676 F.3d 376, 381 (4th Cir. 2012) quoting *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003).

Petitioner attacks his sentence on the grounds that he was incompetent during the plea hearing because of the medications that he took that morning (Doc. 80). Petitioner took several medications before the hearing, including buprenorphine and lorazepam (Evidentiary Tr. at 3). Allegedly, he took double the prescribed dosage of both pills before the plea hearing

(Evidentiary Tr. at 3-4). The drugs allegedly caused some cognitive impairment as Petitioner claims to have "felt kind of out of it basically" (Evidentiary Tr. at 4). Petitioner testified that he had trouble following the discussion with the Court and that "it just seemed like I was, again, zoned out, just high. Everything was being said and just wasn't registering" (Evidentiary Tr. at 5). Petitioner further testified that throughout the entire process from discussing the plea with his counsel and entering his plea in this Court, "his mind was cloudy from the drugs" (Evidentiary Tr. at 60). In sum, Petitioner argues that but for the "handicap of the cognitive side effects, he could well have made a different decision." *Id.*

Petitioner and the Government have stipulated to the fact that some people who take lorazepam and buprenorphine have experienced confusion, sedative or hypnotic effects, dizziness, and hallucinations (Docs. 118, 121). Petitioner claims to have experienced "a clearing of his mind," after he stopped taking buprenorphine and lorazepam (Evidentiary Tr. at 59). Petitioner argues that the clearing of his mind, the parties' stipulation to the drugs' possible side effects, and his testimony about "the way that he felt on the day" of the plea, are sufficient facts to support his alleged cognitive impairment during the plea process (Evidentiary Tr. at 59).

The Government argues that neither Petitioner's guilty plea nor sentence contravenes the Constitution or the laws of the United States because Petitioner has not carried his burden under *United States v. Truglio*, 493 F2d. 574 (1974). In *Truglio*, the Supreme Court held that a petitioner alleging that he was incompetent to plead guilty due to the medication he had taken must demonstrate "that his mental faculties were so impaired by the drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea." *Truglio*, 493 F2d. at 578 (citation omitted).

The Government maintains that under *Truglio*, Petitioner's allegations lack merit because he entered the plea in a knowing and intelligent manner. The record demonstrates that Petitioner fully intended to plead guilty and signed the plea papers before the hearing. (Evidentiary Tr. at 62). Here, Petitioner "did not testify that he was out of it or zonked out any time prior to the day of the plea hearing." *Id.* Petitioner traveled to Virginia with the fully formed intention to enter a guilty plea. *Id.* There is no indication in the plea record that Petitioner's mental faculties were impaired during the plea hearing. While entering his guilty plea, Petitioner "conducted himself at the proceeding as a defendant who was acting knowingly and intelligently" (Doc. 83 at 7). Petitioner appeared to follow what was going on, and answered questions accurately (Evidentiary Tr. at 62). Petitioner's counsel testified that during the entire period of representation, Petitioner "was not experiencing the side effects the experts say may occur in some people who take those drugs" (Evidentiary Tr. at 62).

Finally, the Government argues that Petitioner's allegations feelings of incompetence to enter a plea are incredible because Petitioner is an "admitted fraudster" (Evidentiary Tr. at 63). Petitioner has a proclivity for misstating facts in general. For example, Petitioner previously alleged that he collapsed at the airport shortly after the plea hearing on September 14, 2011 (Docs. 93 at 7; 80 at 3), however the record demonstrates that he collapsed after his arraignment. *See* Docs. 113 at 1; 53 at 5; 27 at 4.

The Government submitted the following declaration from Dr. Nancy Jordan, Petitioner's BOP physician in which she states:

> Mr. Maloy was not incarcerated at FMC Rochester, or any BOP facility, in September 2011. I have no independent knowledge of any medications Mr. Maloy was prescribed or consuming prior to his incarceration at FMC Rochester. As I am not aware of the specific medications Mr. Maloy was prescribed or consuming, I cannot speak to any particular side effects of such medications, to

> include any effects these medications may or may not have on cognitive functioning. ...

> I have observed Mr. Maloy during his incarceration at FMC Rochester, including having various clinical encounters with him. I have had discussions with Mr. Maloy concerning his overall improvement in his physical health and feeling of well being. These discussions are subjective and would have been self-reported information from Mr. Maloy. I have not observed any clinical changes in Mr. Maloy's cognitive functioning during his incarceration at FMC Rochester. An evaluation of Mr. Maloy's cognitive functioning is out of my area of expertise.

Decl. of Nancy Jordan, D.O. at ¶¶ 4,8.

As the Government correctly argues, Dr. Jordan's testimony would have no probative value on the issue of whether or not Petitioner was cognitively impaired on the date of his guilty plea because she was not treating him at the time (Doc. 117 at 11). There is a high level of uncertainty and dearth of evidence to support Petitioner's allegations. Accordingly, the Court finds that Petitioner has not carried his burden to demonstrate that his plea was not knowing or involuntary (Evidentiary Tr. at 63).

Although Petitioner claims that his statement about when he collapsed at the airport was a good faith mistake and that he was confused about the dates when he made that statement, the Court finds that Petitioner's integrity is questionable. Other than the stipulation that buprenorphine and lorazepam could cause cognitive side effects and Petitioner's allegations, Petitioner has not proffered any evidence from which the Court can infer that he was actually impaired on the day that he entered the plea. Further, Petitioner has not presented any testimony about the side effects of the medications from the medical staff from his hospitals in Texas and several doctors who were treating him at the time (Evidentiary Tr. at 63). As mentioned previously, Dr. Jordan's testimony does not provide support for the Petitioner's contentions.

The fact that Petitioner has not provided any evidence beyond his subjective self-reported of feelings of malaise and fogginess that he directly experienced any of these symptoms on the day of the plea hearing is fatal to Petitioner's case. Accordingly, the Court finds that Petitioner's claim of incompetence during the plea hearing lacks merit because Petitioner has failed to demonstrate "that his mental faculties were so impaired by the drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea." *Truglio*, 493 F2d. at 578.

For these reasons the Court denies Petitioner's § 2255 Motion on grounds of incompetence to enter a guilty plea.

### b. Ineffective Assistance of Counsel

The Court denies Petitioner's § 2255 motion on the grounds of ineffective assistance of counsel because Petitioner has not met his burden by the preponderance of the evidence under the two-prong test set forth in *Strickland.*

Under *Strickland*, Petitioner must show that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Petitioner must show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. The prejudice requirement "focuses on whether counsel's constitutional ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Thus, Petitioner "must show that there is a reasonable probability that but for counsel's constitutional errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Petitioner argues that counsel was deficient,[1] under the first prong of *Strickland* because on the morning of the plea hearing, he expressed to his counsel that he was feeling sick before, during and after the hearing and that counsel failed to convey to the Court that Petitioner was in poor mental and physical condition (Docs. 80 at 2-5; 93 at 4 -7). Petitioner argues that because of counsel's personal knowledge of the his history of critical health problems and numerous medications, counsel was obligated to convey this information to the Court and ensure that Petitioner was competent to proceed (Doc. 93 at 7). Under *Strickland* counsel was required to follow up with more questions in his role as defense counsel (Evidentiary Tr. at 59). Had counsel followed up, he would have realized that Plaintiff was cognitively impaired and would have been able to postpone the hearing for a day when Petitioner would have been more focused. *Id.* Thus, had counsel been more effective by inquiring further into Petitioner's wellbeing, Petitioner might have made the decision not to go forward with the plea (Evidentiary Tr. at 59).

As to the prejudice prong of *Strickland*, Petitioner's argument is at best speculative. At the evidentiary hearing, Petitioner's counsel stated:

> THE COURT: All right. Address the issue of prejudice if you would.
>
> MS. STEIN: Well your Honor, I don't know what decision Mr. Maloy would make i[f] the Court granted the motion, whether he would still wish to stand by the plea or fight the charges. I have nothing else to say on the issue of prejudice, your Honor. ...
>
> Your Honor, with a clearer mind, I don't know if he would have made the same decision or not. So I understand the evidence is clear that he met with Mr. Richman and he had already said that he was going to go forward with it. But it's not necessarily so that he would have if his mind was clearer and he understood better what he was doing.
>
> He was on the same drugs when he met with Mr. Richman and said those things. So the entire process was while his mind was cloudy from the drugs. So

---

[1] As mentioned previously, the Court conducted an evidentiary hearing on the factual disputes during which Petitioner abandoned allegations of ineffective counsel concerning the loss amount of sentencing and his being instructed not to make any statements to the Court (Evidentiary Tr. at 26). Petitioner did not pursue claims that counsel induced him to plead guilty by making assurances regarding his sentencing.

13

without the handicap of the cognitive effects, he could well have made a different decision.

Evidentiary Tr. at 60.

In sum, Petitioner argues that *Strickland* required counsel to inquire further into his wellbeing and inform the court of his inability to proceed. Petitioner is unclear about how counsel's alleged failure caused him any prejudice.

The Government argues that under the first prong of *Strickland*, Petitioner has not alleged any facts that would establish that his counsel acted below an objective standard of reasonableness (Doc. 83 at 6). Petitioner's assertion to his counsel that he was not feeling well is not unusual as "it is likely that many defendants make that statement to their counsel on the mornings when the defendants are scheduled to enter guilty pleas" (Doc. 83 at 6). Moreover, Petitioner's demeanor at the hearing appeared to be normal. Petitioner appeared to be was acting knowingly and intelligently. There was nothing unusual about Petitioner's demeanor that should have made counsel doubt Petitioner's competency. *Id.* Thus, Petitioner's statement without more would not have "caused counsel to conclude that petitioner might not be competent to enter a plea." *Id.*

The Government maintains that Petitioner never indicated to counsel at any time during the course of representing him that the drugs he was taking caused any cognitive impairment (Evidentiary Tr. at 62). Counsel testified that he was aware that Petitioner was taking lorazepam and buprenorphine or suboxone and that he in fact discussed these drugs with Petitioner's doctors. *Id.* at 48. However, counsel did not observe anything or hear anything about Petitioner that indicated that he might be experiencing any of some of the possible side effects of taking those drugs. *Id.* At the evidentiary hearing counsel testified about his communications with Petitioner regarding his medications and defense:

14

GOVERNMENT: And, what if anything did he tell you about the side effects he was experiencing that would relate to his mental state?

COUNSEL: Almost all of his comments about his medications, possibly, all of them were about historical side effects relating to a potential defense to the – to the crime, meaning that at the time of the crime, he was too affected by his medications to be responsible for what he had done.

None of it – never did he say that his current thinking or current ability to understand was so affected by his medications and of course, my observation of him didn't suggest that either. …

GOVERNMENT: And when you left, what was Mr. Maloy's mindset regarding whether he wanted to plead guilty?

COUNSEL: Well, "wanted" is maybe not how I would describe it, but he was cognizant of the fact that pleading guilty was going to be his best chance, as far as the end of the result of the case. I don't think I would say that he wanted to.

GOVERNMENT: What do you mean by the end result of the case?

COUNSEL: That he would not have a good chance were we to go to trial. He would likely be convicted, and generally I thought that a lot of the things that we wanted to bring up by way of mitigation at sentencing would have more effect in the context of him not accepting responsibility.

GOVERNMENT: And, did you advise him of that?

COUNSEL: I did.

Evidentiary Tr. at 32, 34.

Counsel testified that when he met with Petitioner in Texas on August 24, 2011 to discuss the plea, their discussion about the effects of the medications focused on Petitioner's past mental state as opposed to his mental state at the time of representation (Evidentiary Tr. at 35). Petitioner told counsel then that his current mental state was about 90 percent. *Id.* On the day of the plea hearing, counsel spoke with Petitioner for about 45 minutes before the proceeding and did not observe anything that led him to believe that Petitioner was incompetent (Evidentiary Tr. at 48-9).

In sum, the Government argues that Petitioner has not shown prejudice under *Strickland* because Petitioner admitted at the evidentiary hearing that he was guilty of the alleged crimes and that Petitioner never indicated to counsel that he wanted to delay the plea process because he

was incompetent (Evidentiary Tr. at 64). Further, during the approximately six months between the plea hearing and the sentencing, Petitioner never said anything to counsel about his health or mental state on the day of the plea. (Evidentiary Tr. at 49).

Based on Petitioner's affirmative responses to the Court's questions and Petitioner's testimony at the evidentiary hearing regarding the representation that he received from counsel, the Court finds that Petitioner has not made a showing, by a preponderance of the evidence that counsel's performance was deficient and that the deficiency prejudiced his defense.

In reviewing counsel's performance, the Court is highly differential and presumes that counsel's conduct while representing Petitioner falls within a wide range of professional assistance. *See Strickland*, 466 U.S. at 687. After observing counsel's performance during the plea hearing and testimony at the evidentiary hearing, the Court finds no evidence of error or conduct by counsel that would have "affected the outcome of the plea process." *Lockhart*, 474 U.S. at 59.

Petitioner's claims of ineffective assistance of counsel are in direct contrast to Petitioner's statements made to the Court under oath during the plea hearing:

> THE COURT: All right.
>
> I see that you are standing there with Mr. Todd Richman and Ms. Aamra Ahmad. Do you understand that you have the right to have attorneys defend you in your case?
>
> Mr. MALOY: Yes, I do.
>
> THE COURT: And have you had sufficient time to discuss your case with your lawyers?
>
> MR. MALOY: Yes, Sir.
>
> THE COURT: After discussing the case with your lawyers, did you decide for yourself that you wanted to plead guilty?
>
> MR. MALOY: Yes, Sir.
>
> THE COURT: Did anyone threaten you or force you to plead guilty?
>
> MR. MALOY: No, Sir.

> THE COURT: Did anyone make any promise to you that by pleading guilty, you would get probation or some other sentence?
>
> MR. MALOY: No, Sir.
>
> THE COURT: And, are you satisfied, that is to say, happy with the work your lawyers have done for you?
>
> MR. MALOY: Yes, Sir. I am very satisfied.

Plea Tr. at 3-4.

The Court finds that counsel testified truthfully that after the course of counseling Petitioner that he had come to the realization that "pleading guilty was going to be his best chance as far as the end result of the case." (Evidentiary Tr. at 32, 34). The plea deal was beneficial for Petitioner.    Petitioner was facing several charges of mail fraud and unlawful monetary transactions however due in part to counsel's effective representation the Government dismissed six counts of the indictment as part of the plea agreement (Doc. 42).    Counsel advocated so effectively on Petitioner's behalf, regarding the inability of the BOP to care for someone with Petitioner's medical condition, that the Court continued the sentencing hearing and ordered the BOP to provide a treatment plan to assure the Court that Petition would receive appropriate medical care during his incarceration (Doc. 83 at 10).  The Court is not convinced that but for counsel's alleged ineffective performance, Petitioner would have decided to go to trial because the plea agreement was beneficial to Petitioner and counsel credibly testified that Petitioner saw the plea agreement as the best outcome considering the charges he was facing.

Even if Petitioner's allegations of ineffective assistance were true, Petitioner has not demonstrated prejudice sufficient to undermine this Court's confidence in the outcome of the case.  In the Fourth Circuit, there is an objective standard of whether or not a Petitioner would have not pled guilty. *See Fugit*, 703 F.3d 248 at 260 (finding no prejudice because decision to go to trial would not have been objectively reasonable where the Government could have offered overwhelming evidence at trial and defendant would have received a longer sentence); *Dyess*,

730 F.3d at 362 (finding no prejudice where Government had overwhelming evidence of defendant's guilt and defendant received substantial benefit from pleading guilty).

Because Petitioner has not met his burden under *Strickland*, this court denies Petitioner's § 2255 Motion on the grounds of ineffective assistance of counsel.

### c. Allegation of Court Error during the Rule 11 Colloquy

The Court denies Petitioner's § 2255 motion on the grounds of error by this Court because there were no indications to the Court that Petitioner was experiencing cognitive effects from his medications during the plea hearing. Where a court is aware that a defendant is on medication that could impair judgment, such information raises a red flag as to the defendant's competence to plead guilty. *Damon*, 191 F.3d 561 at 566. Upon such notice, the Fourth Circuit requires the court to probe for "the relevant facts about the medicinal regimen." *Id*. The Fourth Circuit in *Damon* provides guidance on the depth of inquiry that a district court should make to determine whether a medication is capable of affecting the defendant's mental faculties sufficiently to render him incompetent to enter a guilty plea. *Id*. The Fourth Circuit expects that an examination of the medical records to determine the type, amount, and schedule of medication taken by the defendant would be part of the inquiry. *Id*. at 566.

Petitioner alleges that this Court performed an insufficient inquiry under *Damon* because the fact that Petitioner was taking several drugs that had the potential to confuse him should have raised worrisome "red flags" (Docs. 93; Evidentiary Tr. at 67). At the plea hearing, the Court was aware that Petitioner was taking medications (Doc. 81. at 3). Upon learning that the Petitioner was on medications, the Court followed up by asking Petitioner whether the medications affected his ability to understand the plea process. *Id*.

THE COURT: Have you had any drugs or alcohol before coming to court today?
MR. MALOY: My normal medications I have, but not ...

THE COURT: Do any of your medications prevent your ability to understand where you are and what's taking place?

MR. MALOY: No, Sir.

Plea Tr. at 3.

Petitioner argues that under *Damon*, once the Petitioner said that he was on medication, it was incumbent of the Court to ask what the medications where and what the effects of them are (Evidentiary Tr. at 67). Petitioner argues that under *Damon*, the Court should have continued the inquiry in this way:

MS. STEIN: Something like what kind of effects do the medications have on you, instead of just saying, are you able to move forward. That's the way I read *Damon*, that when the defendant in *Damon* said he was on antidepressant, that something more than are you able to proceed is required, something about what side effects do you experience, or how do the medications [a]ffect you. Certainly not suggesting that your Honor needed a list of all of them or a PDR on the bench, but ...

Evidentiary Tr. at 69.

The Government agrees that *Damon* requires a more thorough inquiry when a court is on notice that a defendant is taking medicine that could impair judgment (Doc. 94). The Government disagrees that Petitioner put this Court on notice that his judgment could be impaired by the medications he was taking on the day of the plea hearing because Petitioner expressly told the Court that he was taking his "normal" medications and that the medications did not prevent him from understanding where he was and what was taking place (Docs. 94; 81; Evidentiary Tr. at 61). The Government maintains that Petitioner's case is different because the court in *Damon* was explicitly told that impaired judgment was a side effect of one of the defendant's medications and the court in *Nicholson* appreciated that the defendant had taken "pain pills" which could affect his sobriety (Doc. 94). In contrast, Petitioner told the court only that he had taken his normal medications did not indicate a need for further inquiry. *Id.*

*Damon* and *Nicholson* control here.   In *Damon*, the defendant attempted suicide within hours of signing a plea agreement and the court was aware of this fact. *Damon*, 191 F.3d at 562. After his release from psychiatric observation, he signed a guilty plea, which he later withdrew. *Id.* at 563. Three days later he changed his mind and decided to accept the plea arrangement. *Id.* During the Rule 11 colloquy, the court was informed that a side effect of one of the defendant's medication was impaired judgment. *Id.*  The Fourth Circuit held that the district court failed to make a sufficient inquiry into whether the defendant was in full possession of his faculties when he pled guilty. *Id.* at 566.

In *Nicholson*, when the defendant informed the court that he had taken medicine, the court asked him to specify what medicine he had consumed. *Nicholson*, 676 F.3d at 379.  Upon learning that the defendant was taking Lortab for pain, the court advised the defendant that "such medication could affect his sobriety, and inquired whether he was sober and understood what he was doing." *Id.* The Fourth Circuit held that the court had conducted a sufficient inquiry into the defendant's competence. *Id.* at 383.

Petitioner's case is distinguishable from *Damon* because neither Petitioner nor counsel provided the Court with notice that Petitioner was experiencing any cognitive side effects from the medications that he took that morning or that he was too sick to enter a plea (Evidentiary Tr. at 68).  The record demonstrates that Petitioner answered several questions correctly before the Court asked him about taking medications (Evidentiary Tr. at 68).  Counsel testified that almost all comments by Petitioner about his medications were about historical side effects relating to a potential defense to his crimes (Evidentiary Tr. at 32) and not about his present mental state of mind. The test of mental competence to stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding –and whether he has

the rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). Given Petitioner's appearance, responses to the questions, and the fact that he had been informed about the nature of his pleading by counsel multiple times prior to the plea hearing, the Court finds no *red flags* were triggered.

Under *Nicholson* it would have been prudent for the Court to ask Petitioner to specify exactly what medications he was taking at the plea hearing. However, this omission is not fatal here because there was no indication that Petitioner was cognitively impaired. Assuming arguendo that the Court did err, there was no prejudice to Petitioner because as the record demonstrates. Petitioner came to Virginia to plead guilty. Petitioner admits that he committed the crimes. Petitioner does not claim innocence, and Petitioner has not made a credible showing that but for the Court's error he would have chosen to go to trial. The Court recollects that Petitioner's demeanor during the plea hearing was that of a competent individual. The Court was convinced of Petitioner's awareness of the gravity and consequences of the proceeding.

Because the Court conducted a sufficient inquiry into Petitioner's competence to enter a plea and Petitioner has not made a showing of prejudice caused by the Court's alleged errors, the Court denies Petitioner's § 2255 motion.

### III. CONCLUSION

For the reasons stated above, the Court denies Petitioner's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 79). The Court finds that Petitioner's claims of incompetence to enter a plea lack merit because Petitioner failed to demonstrate that, due to the side effects of the drugs he had taken, he was cognitively impaired at the time that he entered his plea. The Court further finds that Petitioner's claims of ineffective assistance of counsel lack merit because Petitioner failed to demonstrate that counsel's performance was deficient, and (2) counsel's

deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. The Court finds that Petitioner's claims of error by this Court lack merit because there were no indications that Petitioner was experiencing cognitive effects from his medications during the plea hearing. Finally, the Court finds that even if any of Petitioner's allegations were true, Petitioner has not made a showing of prejudice sufficient to undermine confidence in the outcome of the case.

For the foregoing reasons, it is hereby

ORDERED that Petitioner's Motion under 28 U.S.C. § 2255 (2008) to Vacate, Set Aside, or Correct Sentence (Doc. 79) is DENIED.

IT IS SO ORDERED.

ENTERED this 7th day of July, 2014

Alexandria, Virginia
7/7/14

_____/s/_____
Gerald Bruce Lee
United States District Judge